UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRIAN AMES,**

      **Plaintiff,**

  v.

**FRANK LAROSE,**

      **Defendant.**

:

:

:

**Case No. 2:22-cv-2085**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Brian Ames is a member of the Ohio Republican Party ("ORP"); he has run for ORP's State Central Committee and plans to run again.[1] He brought this suit against Frank Larose, the Ohio Secretary of State, in LaRose's official capacity to challenge the constitutionality of Ohio Rev. Code § 3517.03. According to Ames, the mandate that a political party's controlling committee be comprised of one man and one woman from each district and the imposition of term limitations for committee members make the law facially invalid under the First and Fourteenth Amendments to the United States Constitution.

---

[1] Although not relevant to the disposition of his case, it is unclear whether Ames ran as a representative for the 32nd senatorial district (as alleged in the Amended Complaint (¶¶ 6–7)), the 18th senatorial district (as identified in his declaration of candidacy (ECF No. 5-1)), or the 28th senatorial district (as reported in the official election results, *see* OHIO SECRETARY OF STATE, PRIMARY/SPECIAL ELECTION AUGUST 2022: OFFICIAL RESULTS (Aug. 2022), *https://www.ohiosos.gov/elections/election-results-and-data/2022-official-election-results/* (last visited January 27, 2023)).

This matter is before the Court on several motions, chiefly Defendant's Motion to Dismiss the Amended Complaint. (ECF No. 17.) Plaintiff filed a Motion for Preliminary Injunction (ECF No. 15), a Motion for Partial Summary Judgment (ECF No. 16), and a Motion for a Preliminary Injunction Conference (ECF No. 28). The motions are fully briefed and ripe for consideration.[2]

For the reasons stated herein, Defendant's motion to dismiss is **GRANTED**. As a result, the remaining motions are **DENIED** as moot.

## I.  BACKGROUND

Ohio law requires that the controlling committee of a major political party "shall be a state central committee consisting of two members, one a man and one a woman, representing either each congressional district in the state or each senatorial district in the state, as the outgoing committee determines. . .." Ohio Rev. Code § 3517.03. Ohio also requires that "[a]ll members of such committees shall be members of the party and shall be elected for terms of either two or four years, as determined by party rules, by direct vote at the primary held in an even-numbered year." *Id.*

Ames has voted and ran in his district's primary elections for ORP's State Central Committee and plans to do so again. (Am. Compl., ¶¶ 6–7, 9). He claims that his inability to run for both representative positions in his district because of his gender interferes with his freedom of association and his right to equal

---

[2] Plaintiff requested oral argument on each motion. Because the Court does not believe additional argument would be helpful, that request is **DENIED**.

2

protection. (*Id.* at ¶¶ 26–34, 36–41.) Ames also claims that Ohio law interferes with his freedom of association by preventing him from selecting term limitations for ORP representatives, from voting for representatives of his choice irrespective of their gender, and by limiting ORP's ability to self-govern. (*Id.* at ¶¶ 6–13, 23–24, 28–31, 34.)

Defendant now moves to dismiss Ames's claims because, among other reasons, Ames lacks Article III standing.

## II. MOTION TO DISMISS

Defendant's motion seeks dismissal under both 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The Court need only address Defendant's 12(b)(1) challenge here because it is dispositive.

Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. S.W. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading," and the Court therefore takes the allegations of the complaint as true. *Gentex Bldg. Prods. Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (internal quotations omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Id.* No presumptive truthfulness applies to

the factual allegations in the Amended Complaint and the Court may consider evidence outside of the pleadings. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). Here, Defendant brings both a facial and factual attack.

### A. Article III Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (quotations and citations omitted). Article III "[s]tanding is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tennessee Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (citations omitted). When a plaintiff brings facial challenges to a statute, the standing doctrine requires that they have a "personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio,* 503 F.3d 456, 463 (6th Cir. 2007). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[p]laintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

To prove he has standing, Ames must demonstrate "(1) that [he has] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) that a causal link exists between the injury and the conduct complained of, . . . and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Midwest Media Prop., LLC v. Symmes Twp., Ohio*, 503 F.3d 456, 461 (6th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)). Failure to meet any of the three requirements means that Ames does not have Article III standing.

**B.  Ames has failed to demonstrate causation and redressability.**

Ames's claimed injuries are his inability to run for both representative positions in his district, his inability to vote for representatives of his choice irrespective of their gender, his inability to vote for term limitations, and ORP's inability to self-govern. (Am. Compl., ¶¶ 6–13, 21–24; *see also* Ames Affidavit, ECF No. 15-1, ¶¶ 7–9, 15–16.) Defendant challenges the factual existence of causation and redressability for these injuries.

The "one man, one woman" requirement and term limitations that Ames complains of also appear in the ORP State Central and Executive Committee's Permanent Rules, which state:

> The controlling committee of the Ohio Republican Party (the "ORP"), the Republican State Central Committee, shall consist of two members, one man and one woman, representing each senatorial district in the state. All members of the committee must be members of

5

>the Republican Party and shall be elected for terms of two years, by
>direct vote at the primary held in an even-numbered year.
>(ORP State Central and Executive Committee's Permanent Rules, ECF No.

17-1, Art. 1 § 1.) Based on this rule, Defendant argues that Ames cannot establish that his injuries are caused by state law because his injuries are traceable to his own political party. (Mot., ECF No. 17, PAGEID # 106–107.) And because Ames provides no evidence that ORP would adopt different rules if the challenged law were invalidated, Defendant argues that Ames cannot establish that his injuries would be redressed if his request for declaratory and injunctive relief is granted. (*Id.* at 107.)

Although causation and redressability are distinct requirements, there is a practical connection between them: if an injury is not caused by the challenged action, then it is unlikely that a court order directed at that action will redress the injury. This connection is particularly apparent where, as here, the claimed injuries arise from regulation of a third party that is not before the court; in that instance, "[t]he burden. . . falls on the plaintiff to present facts showing that the third party's 'choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Schickel v. Dilger*, 925 F.3d 858, 866 (6th Cir. 2019) (quoting *Lujan*, 504 U.S. at 562).

For example, in *Schickel*, individual legislators challenged a Kentucky law that prohibited lobbyists from making or receiving certain contributions, gifts, or solicitations from legislators or legislative candidates. *Id.* at 865–67. The plaintiffs claimed that the law interfered with their ability to freely associate with lobbyists.

6

*Id.* 66–67. However, they provided no evidence that any lobbyist would change his or her current practice and choose to associate with the plaintiffs if the law were invalidated. *Id.* "The lack of such evidence doom[ed] their claims" because, without it, the plaintiffs could not show that their injuries were caused by Kentucky law as opposed to the lobbyists' independent decisions. *Id.* at 867–68 (citing *Tennessee Republican Party v. Sec. & Exch. Comm'n*, 863 F.3d 507, 517 (6th Cir. 2017)). For the same reason, it was unlikely that a court order invalidating the challenged law would redress the legislators' alleged injuries. *Id*. at 867–68.

Outside the Sixth Circuit, several courts have addressed Article III standing in suits challenging state regulation of political parties. *See e.g.*, *Marshall v. Meadows*, 105 F.3d 904 (4th Cir.1997); *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006); *Charleston Democratic Town Committee v. Connell*, 789 F. Supp. 517 (D.R.I. 1992); *San Francisco Cnty. Democratic Cent. Comm. v. Eu*, 826 F.2d 814 (9th Cir. 1987), *aff'd on other grounds by* 489 U.S. 214, (1989). Those courts have all concluded that, to establish standing, plaintiffs must demonstrate that the regulated political party would change its rules or conduct if the challenged law were struck down. *See Marshall*, at 904–06; *Miller,* at 314–18; *Connell*, at 521–25; *Eu,* at 823–25.

In *Marshall*, members of the Virginia Republican Party ("VRP") challenged a Virginia law that required political parties to hold open primaries. *Id.* at 904–06. VRP rules also required open primaries and there was no indication that VRP would revise its rules if the challenged law were invalidated. *Id.* Thus, it was VRP

7

rules, not the state law, that caused the alleged injuries, and those plaintiffs were without standing to challenge the statute. *Id.*; *see also Greenville Cnty. Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 F. App'x 244, 255 n.15 (4th Cir. 2015) (evidence that the State Party "vaguely indicat[ed] support" for a different law was insufficient to establish causation and redressability when the party's rules and conduct were consistent with the challenged law).

A few years after *Marshall*, a new group of VRP members challenged the same open primary law. *Miller*, 462 F.3d at 314–18. This time, the plaintiffs provided evidence that VRP had amended its rules to exclude certain voters from an upcoming primary election, thus demonstrating that VRP did not want an open primary. *Id.* at 314–315 Because the VRP rules were different from the challenged open primary law, the plaintiffs' injuries were fairly traceable to Virginia law. *Id.* at 314–316. The evidence also established that declaratory relief invalidating the state law would redress the plaintiffs' injuries. *Id.* at 318. Thus, the *Miller* plaintiffs had standing to bring their claims. *Id.*

Along the same lines, in *Connell*, members of the Charleston Democratic Town Committee lacked standing to challenge state laws that permitted endorsements from senatorial or representative district committees but not from town committees. 789 F. Supp. at 521–23. In that case, the bylaws of the Rhode Island Democratic Party ("RIDP") were consistent with challenged laws. Also, RIDP intervened as a defendant and presented evidence that it would not change its bylaws if the laws were declared unconstitutional. *Id.* at 524–25. Accordingly, the

8

Town Committee's injuries were caused by its own party and those injuries would not be redressed if the laws were invalidated. *Id.*

Finally, in *Eu*, several political parties, including the California Democratic Party ("CDP"), challenged a California law with a "one man, one woman" requirement that was similar to Ohio law. 826 F.2d at 823. CDP rules mirrored the challenged law. *Id.* And, although CPD had not changed its rules like the political party in *Miller,* the *Eu* plaintiffs established standing by demonstrating that CPD disagreed with the law, that it involuntarily adopted rules in compliance with the law to avoid criminal sanctions, and that it would change its rules if the law were invalidated. *Id.* at 823–24.

Here, Ames presents no evidence that ORP disagrees with Ohio law or that it would change its rules if the law were struck down. Thus, Ames's claimed injuries are traceable to ORP rules, not Ohio law. Likewise, there is no basis to believe that Ames's injuries would be redressed by his requested relief—unless ORP chooses to amend its rules, Ames will continue to suffer the same injuries irrespective of any order issued in this case.

In an effort to avoid dismissal, Ames rightly points out that political parties "are not required to make the empty gesture of passing rules that are void as a matter of law and ignored as a matter of institutional practice in order to satisfy standing requirements." (Resp., ECF No. 22, PAGEID # 221 (quoting *Eu*, 826 F.2d at 823).) But there must be some indication that ORP would adopt different rules if the challenged law were struck down. Here, there is none.

9

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 17) is **GRANTED** and the case is **DISMISSED**. As a result, Plaintiff's pending motions (ECF Nos. 15, 16, 28) are **DENIED** as moot.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**